IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM CANNARIATO, <br>                          Plaintiff, <br> v. <br><br> OFFICER KYLE SCHAUER <br><br> -and- <br><br> POLICE CHIEF <br> CHRISTOPHER BUHAY <br><br> -and <br><br> MOUNT CARMEL BOROUGH <br><br> -and- <br><br> MOUNT CARMEL OFFICERS <br> JOHN DOE 1-2, <br>                          Defendants. | CIVIL ACTION <br><br> NO. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff, William Cannariato, by and through his undersigned counsel of O'Hanlon Schwartz, P.C., hereby demands a trial by jury and complains in the present Complaint against the above-captioned Defendants in their individual and policymaker capacities as follows:

### Statement of Claim and Jurisdiction

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment and Fourteenth Amendment to the United States Constitution against Defendants in their respective individual and policymaker capacities. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2. It is alleged that the individual Defendants violated Plaintiff's Fourth Amendment rights by initiating a malicious prosecution of Plaintiff, which resolved in Plaintiff's favor. In addition, there was fabrication of evidence by Defendant Officers Kyle Schauer and John Does. The Constitutional violations were also the result of customs and policies formulated by policymaker Chief Christopher Buhay and Mount Carmel Borough to cover up illegal and violent arrests of individuals such as Plaintiff.

## Parties

3. Plaintiff, William Cannariato (hereinafter "Plaintiff"), is a citizen of the United States and at all times relevant to the claims arising herein was a citizen of the Commonwealth of Pennsylvania and resident of Montour County and the Borough of Danville.

4. Defendants, Officer Kyle R. Schauer and Mount Carmel Police Officers John Does #1-2, (hereinafter "Defendant Officers") were at all times relevant to this complaint duly appointed and acting officers of law enforcement agencies, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and the Borough of Mount Carmel. Officers John Does #1-2 are Caucasian male officers. All Defendant Officers as well as John Does will collectively be referred to as "Defendant Officers."

5. Defendant Police Chief Christopher Buhay ("Defendant Buhay") was at all relevant times the Chief of Police of Mount Carmel Borough in Northumberland County, Pennsylvania and was at all relevant times the policymaker for the Mount Carmel Police Department, responsible for the enactment and implementation of all customs, policies, procedures, and oversight of the Mount Carmel Police Department.

6. Defendant Mount Carmel Borough is a municipal corporation and the public employer or former employer of Defendant Officers and Defendant Buhay.

## Facts

7. On or about December 30, 2019, Plaintiff was located at a Turkey Hill store located in Mount Carmel Borough and had been assisting a friend move baby furniture.

8. Plaintiff passed a bag to his friend, which contained no contraband or illegal substances.

9. Plaintiff began to drive off with his friend, Anthony Bosland, in the vehicle.

10. Defendant Officers pulled Plaintiff over because Defendant Officers stated that Plaintiff's tail lights were not properly functioning.

11. Plaintiff was ordered out of the vehicle and fully complied with police commands.

12. Defendant Officers continually screamed at Plaintiff, "where are the drugs?" Plaintiff had no drugs.

13. Defendant Officers searched Plaintiff and the vehicle three times and found nothing.

14. Plaintiff requested that he be allowed to contacted an attorney. Immediately and without any warning or investigation, each and every Defendant Officer, acting in concert, attacked Plaintiff. Defendant Officers smashed Plaintiff's head on Plaintiff's truck, Defendant Officers punched Plaintiff multiple times, Defendant Officers zip-tied Plaintiff's hands and feet, Defendant Officers placed their knees on Plaintiff's neck, Defendant Officers sat on Plaintiff, Defendant Officers repeatedly tased Plaintiff causing extensive damage to Plaintiff's kidneys, Defendant Officers broke both of Plaintiff's hands, Defendant Officers broke two of Plaintiff's

ribs, Defendant Officers mased Plaintiff, and Defendant Officers caused Plaintiff's teeth to protrude through Plaintiff's skin in his mouth area resulting in multiple facial stitches.

15. At all times relevant hereto, Plaintiff obeyed the commands given to him by Defendant Officers. Further, at no time relevant hereto, did Plaintiff engage in any behavior which could have been considered a threat to any of Defendant Officers.

16. Plaintiff suffered two broken hands and injury to his face and body area as a result of being assaulted by Defendant Officers.

17. Plaintiff continued to state that he had done nothing wrong.

18. Each and every Defendant Officer, acting in concert, then proceeded to arrest Plaintiff, handcuffing him, and placing him in the back of an ambulance. Plaintiff did not use or threaten any force and the only use of illegal force was initiated and perpetuated by each and every Defendant Officer against Plaintiff.

19. Plaintiff was arrested and transported to Danville Trauma ICU and then to the police station where Plaintiff was photographed and fingerprinted. A local constable encouraged Plaintiff to sign himself out of the hospital to appear before a judge before the New Year's holiday. Plaintiff was incarcerated over night at the local jail before making bail, paying 10% of $60,000. Plaintiff was sent back for medical treatment prior to making bail.

20. Plaintiff was charged as of docket number CP-49-CR-0000335-2020 despite having no contraband and having done nothing illegal. There was, thus, no probable cause to initiate criminal proceedings against Plaintiff.

21. On July 5, 2023, all charges with withdrawn against Plaintiff because Plaintiff had done nothing wrong and any charges were without probable cause and based upon manufactured evidence manufactured by Defendant Officers.

22. Defendant Officers' actions perpetrated against Plaintiff constitute a malicious prosecution under the Fourth Amendment as well as Manufacturing of Evidence under the Fourteenth Amendment. All Defendant Officers had full knowledge of the lack of any legitimate cause or justification, and the conduct was intentional, malicious, reckless, and in bad faith. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer physical injury and mental anguish.

23. At all times during the events described above, Defendant Officers were engaged in a joint venture. The individual Defendant Officers assisted each other in performing the various actions described herein and lent their physical presence and support and the authority of their offices to each other during the said events. Defendant Officers acquiesced in the joint venture and this was exhibited by their joint explicit verbal agreement and commands, their joint gestures, and their joint physical actions that were directed at violating Plaintiff's rights. Each and every Defendant Officers, acting individually and jointly, caused injury to Plaintiff for no reason, and initiated a baseless seizure and arrest against Plaintiff.

24. Defendant Officers' actions, acting under color of state law, deprived Plaintiff of his rights under the Constitution of the United States; in particular, the right not to be maliciously prosecuted and to have evidence manufactured against him.

25. By these actions, Defendant Officers have deprived Plaintiff of his rights secured by the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. Section 1983. As a direct and proximate result of the said acts of Defendant Officers, Plaintiff suffered the following injuries and damages:

    a. Violation of his Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

  b.  Loss of physical liberty;

  c.  Emotional and physical injury;

  26.  The actions of Defendant Officers violated the following clearly established and well-settled federal constitutional rights of Plaintiff:

  a.  Freedom from malicious prosecution and having manufactured evidence presented as the basis for criminal charges.

  27.  Defendant Officers' actions were malicious, illegal, unlawful, and directed at depriving Plaintiff of his constitutional rights.

  28.  Defendant Buhay, as policymaker, perpetuated a municipal custom and *de facto* policy whereby Defendant Officers and other officers in Defendant Mount Carmel perpetuated a municipal custom whereby Defendant Officers and other officers in Defendant Mount Carmel would use excessive force on arrestees, such as Plaintiff, and conceal, cover up, and manufacture evidence against arrestees such as Plaintiff.

  29.  On June 16, 2023, "[t]he United States Attorney's Office for the Middle District of Pennsylvania announced that former Lt. David Donkochik, age 51, former Patrol Officer Jonathan McHugh, age 35, and Patrol Officer Kyle Schauer, age 34, of the Mt. Carmel Borough Police Department, were indicted yesterday by a federal grand jury for charges of using excessive force when arresting people over a three-year period. According to United States Attorney Gerard M. Karam, the indictment alleges that former Lt. Donkockik, former Patrol Officer McHugh, and Patrol Officer Schauer were involved in a conspiracy to violate the civil rights of those they arrested from 2018 to 2021. The indictment alleges that in 22 different arrests, they kicked, punched, choked, and otherwise used excessive force against those they were arresting. In those arrests, they caused bodily injuries to their victims. Donkochik, McHugh and Schauer took steps

to ensure that video of the arrests were not captured by police cameras, or if footage that incriminated them was captured, took steps to ensure that footage was not preserved. They falsely reported that arrestees acted in a manner requiring violence and then charged arrestees with aggravated assault, resisting arrest, and related offenses to conceal their own use of violence. Donkochik, McHugh and Schauer would then threaten arrestees with more violence."

30. This is a small police department with 8 full-time officers and Defendants Buhay and Mount Carmel knew of, approved, and failed to correct these practices making them a custom and policy of Defendant Mount Carmel.

31. These customary practices were already known in 2022 when Lt. Donkochik was effectively forced to retire because he knew of ongoing investigation into his and Defendant Officers' illegality. Despite this, Mayor Philip "Bing" Cimino of Defendant Mount Carmel announced that the Monday of Donkochik's retirement would be "Lt. David 'Duke' Donkochik Day" in Defendant Mount Carmel. Despite knowing of Donkochik's and Defendant Schauer's illegality and pending criminal charges Defendants Buhay and Mount Carmel allowed these individuals continue to represent the police department and Defendant Mount Carmel in manufactured and illegal active criminal cases, thereby continuing and perpetuating a custom and *de facto* policy of allowing criminal police officers to engage in malicious prosecutions with manufactured evidence such as in Plaintiff's criminal case.

32. Defendants Buhay and Mount Carmel took no corrective action such as training or discipline and allowed known illegal customs and practices to continue.

## Causes of Action

### COUNT ONE: 42 U.S.C. § 1983 – FOURTH AMENDMENT MALICIOUS PROSECUTION BY PLAINTIFF AGAINST ALL DEFENDANTS

33. Plaintiff incorporates paragraphs 1 through 32 above as though fully set forth.

34. Defendant Officers initiated a meritless criminal proceeding against Plaintiff, the criminal proceeding ended in Plaintiff's favor when the Commonwealth of Pennsylvania withdrew all charges on July 5, 2023. Defendant Officers made false and manufactured claims against Plaintiff, these Defendant Officers acted maliciously or for a purpose other than bringing Plaintiff to justice and to cover up their customary practice of using excessive and unjustified force, and Plaintiff suffered deprivation of liberty and was arrested and incarcerated overnight in county jail.

35. Defendant Officers acted individually and in concert in perpetuating a baseless criminal prosecution against Plaintiff and did so acting under color of law.

36. The whole prosecution was based upon Defendant Officers' fabrication, lies, and intimidation. The process initiated and perpetuated was unreasonable and had no basis in law.

37. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983, including the right to be free from malicious prosecution.

38. Defendant Officers intentionally engaged in a malicious prosecution whereby they initiated a malicious prosecution in violation of Plaintiff's constitutional rights. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights, and therefore warrants the imposition of exemplary and punitive damages to punish and deter Defendant Officers and others like the Defendant Officers from further wrongdoing.

39. For at least three years prior to Plaintiff's arrest, policymaker and supervisory officer Defendant Buhay and Defendant Mount Carmel implemented, oversaw, and failed to correct a custom and *de facto* policy whereby its officers routinely concealed excessive force used and manufactured charges against individuals to cover up the baseless use of police violence.

40. Defendant Officers in Plaintiff's case continued the custom and policy of Defendant Buhay and Defendant Mount Carmel by using excessive force on Plaintiff and seeking to cover up same by initiating baseless criminal charges against Plaintiff.

41. Defendant Buhay and Defendant Mount Carmel continue the custom and policy by having taken no remedial action in Plaintiff's case. Defendant Buhay is, thus, subject to supervisory and policymaker liability.

42. Plaintiff should, therefore, be compensated for the violations of his Fourth Amendment rights.

43. Plaintiff was illegally seized and arrested by Defendant Officers, acting in concert. Defendant Officers unreasonably seized, arrested, prosecuted Plaintiff when Plaintiff had committed no crime.

44. As a result of the Defendants' conduct, they are liable for Plaintiff's injuries because they were integral participants in the unreasonable seizure and arrest.

45. All of the aforementioned acts of the Defendant Officers were carried out under the color of state law and by the Defendant Officers in their individual capacities with all actual and/or apparent authority afforded to police officers.

46. All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth Amendment to the

Constitution of the United States of America and in violation of 42 U.S.C. § 1983, including right to be free from malicious prosecution.

47. All individual Defendants' (including Defendant Buhay's) conduct was willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights and safety and, therefore, warrants the imposition of exemplary and punitive damages.

48. Plaintiff should, therefore, be compensated for the violation of his Fourth Amendment rights.

**COUNT TWO: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT MANUFACTURING/FABRICATING EVIDENCE, DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW BY PLAINTIFF AGAINST ALL DEFENDANTS**

49. Plaintiff incorporates paragraphs 1 through 48 above as though fully set forth.

50. The individual Defendant Officers, acting individually and in concert, and within the scope of their employment with the deprived Plaintiff of his clearly established constitutional right to due process of law and to a fair trial by engaging in:

**Fabrication:** All individual Defendant Officers fabricated evidence including but not limited to a wholly false and fabricated narrative of possession of contraband and resisting arrest.

51. The individual Defendant Officers performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly-established Constitutional rights. No reasonable officer would have believed this conduct was lawful.

52. The manufactured evidence continued to be used against Plaintiff until July 5, 2023 when all charged were dropped.

53. Defendant Officers' acts and omissions, as described above, were the direct and proximate cause of Plaintiff's injuries. Defendants knew, or should have known, that their conduct would result in Plaintiff's wrongful prosecution and the harms he sustained as a direct result.

54. Defendant Officers intentionally engaged in a malicious prosecution whereby they initiated a malicious prosecution in violation of Plaintiff's constitutional rights. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the individual Defendants (including Defendant Buhay) and others like the individual Defendants from further wrongdoing.

55. For at least three years prior to Plaintiff's arrest, policymaker Defendant Buhay and Defendant Mount Carmel implemented, oversaw, and failed to correct a custom and *de facto* policy whereby its officers routinely concealed excessive force used and manufactured charges against individuals to cover up baseless use of police violence. Defendant Buhay continuously and knowingly supervised the known illegal practices, as alleged herein.

56. Defendant Officers in Plaintiff's case continued the custom and policy of Defendant Buhay and Defendant Mount Carmel by using excessive force on Plaintiff and seeking to cover up same by initiating baseless criminal charges against Plaintiff.

57. Defendant Buhay and Defendant Mount Carmel continue the custom and policy by having taken no remedial action in Plaintiff's case.

58. Plaintiff should, therefore, be compensated for the violations of his Fourteenth Amendment rights.

## Prayer for Relief

WHEREFORE, Plaintiff requests that this Court:

    a.    Award compensatory damages to Plaintiff against Defendants;

    b.    Award costs of this action to Plaintiff;

    c.    Award reasonable attorneys' fees and costs to Plaintiff pursuant to 42 U.S.C. §§ 1983 and 1988 and any other applicable law;

    d.    Award punitive damages to Plaintiff on all counts against all individual Defendants to punish them for the wanton and willful actions described above and to deter further wrongdoing especially because Defendants used excessive force for no reason and sought to cover up same by initiating a malicious prosecution and fabricating evidence;

    e.    Award such other and further relief as this Court may deem appropriate.

## Demand for Jury Trial

Plaintiff hereby demands a jury trial.

Respectfully submitted,

**O'HANLON SCHAWARTZ, P.C.**

STEPHEN T. O'HANLON, ESQUIRE

DATE: January 4, 2024

**O'HANLON SCHWARTZ, P.C.**
BY:   Stephen T. O'Hanlon, Esquire (PA Bar # 208428)
Attorneys for Plaintiff
2 Penn Center, Suite 1410
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel: (267) 546-9066
Fax: (215) 563-6617
steve@ohanlonschwartz.com